RUSBULDT, ASSISTANT SECRETARY, VETERANS AFFAIRS, 2012-7177. It is Gerard Brady, when you're ready. Virginia Gerard Brady, appearing on behalf of Cheramy Rusbuldt, who is the claimant widow in this case. As you're probably already aware, the evidentiary standard for VA disability benefits is found at 38 U.S.C. 5107, subsection B. And that statute provides that where there is a balance of positive and negative evidence, then the claimant gets the benefit of the doubt. Both this court and the CABC... Is there such a balance here, or was there no evidence that the claimant's husband ate raw fish and or that the raw fish caused the disease? Well, we would ask in this case that the court examine negative evidence and what negative evidence means. And this case, I think, provides a good example of a situation in which there was no evidence which negated or served to specifically negate... That sounds like an absence of evidence. Well, I would say it was an absence of evidence. And so that creates a balance? Not under your case law or CABC. This court has found, as well as the CABC, that the absence of evidence cannot constitute negative evidence. And a speculative medical opinion cannot constitute negative evidence. So this court has, in fact, in the past, ruled upon what can and cannot constitute negative evidence for purposes of a VA disability claim. Do we even get, though, to sub-paragraph B? I mean, don't we have, and isn't there a provision first that there is an obligation on the part of the claimant to satisfy an initial burden? Not in VA law. In VA law, the claimant has the obligation to present and support the claim. This court has referred to that or talked about that as the burden of production. But there is an obligation on both the part of the veteran and the VA. So the veteran must file a claim that is admittedly plausible. At that point, VA has certain obligations. It's kind of a tennis match back and forth. The veteran says, here is my assertion. Here is my evidence that I have. VA looks at that and says, okay, well, here's what we'll do for you. And here's what we still need from you. So you're saying that the veteran's claim can be completely speculative, saying, I think this is what caused my problem. It cannot be completely speculative. So if there is a medical opinion in which the examiner says, I can't make an opinion without resorting to speculation. I just can't tell you one way or the other. That's not good enough. And the court has said, that's not good enough. That's not evidence. It's neither positive nor negative. It's essentially nothing. If the examiner says, well, I think it's more likely, or it's reasonable to assume that this is related to this, that's enough in the absence of negative evidence. If there is no evidence that contradicts that or negates that in some way, that's good enough under VA law because the statute contemplates doubt. So doubt cannot defeat a claim. What defeats a claim is a preponderance of negative evidence. In this particular case, there was no negative evidence, which means there couldn't have been any preponderance. Tell me if I'm remembering this wrong. I thought that what the CABC said was, this is in fact a case in which you had nothing more than speculative evidence. Now, maybe that's right. Maybe that's wrong. But we don't get to review that, right? So that there's no legal error if, in fact, in the determination that if there was no more than speculative evidence, then Fagan and Skozen say we're not into the benefit of the doubt rule. I think you can review initially the question of whether or not you need negative evidence to satisfy the negative evidence requirement of the statute. So I think that on the outside you say, yes, you've got to have some negative evidence to do that. I'm sorry, but as I read our cases, Fagan and Skozen, that's not correct. There doesn't have to be negative evidence. As long as the claimant has nothing more than speculative evidence, the rule is claimant loses even if there's no negative evidence. That's correct. If there is no evidence, there's zero evidence. It's a zero balance sheet. So if there's no negative evidence, but the veteran or VA, because both bear an equal obligation to present evidence, if VA says all we've got is a speculative opinion, purely speculative, then, yeah, we've got nothing, zero balance, there's no evidence, and that defeats the claim. All right, well, here's how the Board described Dr. O'Reilly's opinion. And now you have a different view of what Dr. O'Reilly said. But what the Board said is Dr. O'Reilly's opinion that the veterans – I'm not going to even try to pronounce it. Yes. May have been due to contraction of a parasite while serving in Vietnam is wholly speculative and not supported by the medical evidence of record. It only suggests that it's within the realm of medical possibility that the veteran may have contracted a parasite, not that it is at least as likely as not. So, I mean, even if we read Dr. O'Reilly's opinion and say we think he actually went a little farther than that, we can't – this is a finding of fact as to that opinion, is it not? Well, I guess what I would say is that I don't know if that's a question that's been decided whether or not the Board can decide whether or not the opinion is speculative or not. Because a speculative opinion traditionally has been an opinion where the examiner specifically says, I can't make an opinion without resorting to mere speculation. And that is what has always been understood to be a speculative opinion in VA law. In this case, the Board said, well, we're going to read that as being speculative. Well, what he said was – he didn't say he was speculating. Dr. O'Reilly didn't – the VA examiner did. The speculative opinion in this case, I would say, was the VA examiner's opinion that said, I can't make an opinion because I don't know if he ate the fish or not. As opposed to Dr. O'Reilly, who both times said, there's a relationship between these two things. It's within the realm of possibility that one is related to the other. Dr. O'Reilly did not speculate. He said, this is my opinion. He provided an opinion. There was other evidence in the record besides the medical opinion. What was his opinion? His opinion was – Beyond it is within the realm of possibility that – It's reasonable to assume it's within the realm of medical possibility. But he did not ever even express the opinion he thinks it's more likely than not or that this was the cause. He did not say the magic word. Am I remembering right that – I guess this is a memory of what's not there. Nobody has examined the traditional kind of relative risk analysis in the medical literature about how many people who get CCA were exposed to this parasite and how many weren't. No, Your Honor. We presented and submitted whatever treatise evidence we could find on that in terms of the statistical data with the cholangiocarcinoma and the relationship between the population of Southeast Asia and specifically the condiment, the nuocmam. I don't even know if I'm saying that correctly. And the ingestion of that and the fact that it is not a cancer that exists in such a high percentage in this country. So, I mean, you're right. We gave you what we had, basically. We had one doctor saying, I think the relationship, it seems unusual. He spent 20 years in service. He was in Vietnam. These are all facts. What legal question gives us jurisdiction? I'm asking you to define negative evidence. I'm asking you under 5107, subsection B, what constitutes negative evidence? Is that language in the statute? The language is that… Negative evidence? Negative evidence. Where there is a balance of positive and negative evidence, then the benefit of reasonable doubt goes to the veteran. Right. And even if we agree that we would have jurisdiction to do that, we have to get past A and assume you got to B. Right. Then you go to the remedy and you say, is there prejudicial error here? Is there a reason to even send it back, even if we make that finding? At that point, then you do. You look at the facts to decide whether it would make any difference if you send it back. You can't look at the facts, obviously, for purposes of deciding the legal question, but you can for purposes of a remedy to send it back. And if you send it back, then you do. You need to look at the facts and say, will it make any difference if we make this ruling and they apply that? And I would say that, yes, but if you're going to tell the court, you've got to have negative evidence before you can find that there's a preponderance of evidence. You've got to have something that negates. And I understand, you can look back and say, well, wasn't it all speculative? Well, I suppose that's obviously in the eye of the beholder, whether something is speculative or not, absolutely. But those opinions were not the only evidence in the record. There were buddy statements from people that the veteran had served with who said, I ate with him in those establishments. He ate those condiments like everybody else did. We had basically as much as we could give you to tie these things together, to connect the dots. Is there anything in the statistical data or the other evidence that you submitted that would have indicated how else someone might contract a parasite like this? No. I mean, obviously when you're dealing with cancers, you're never dealing with certainties. I will admit that we didn't look for an intervening cause. I mean, what we were looking was a way to positively link one to the other. So I did not, in my own personal research. Thank you. We'll save your rebuttal time, Ms. Sherrod Brady. Mr. Goodman. Good morning, Your Honors. May it please the Court. There is negative evidence in this case the Board relied upon. So even if Ms. Roosevelt were correct as to her entire argument, nonetheless, this would be issuing an advisory opinion. In this case, I'd like to point the Court to a couple of specifics in the record. The Board noted that biliary washings were done. An ERCP was done with biliary washings. And the VA examiner said, biliary washings should have demonstrated the presence of organisms. Only if one is looking. And the CAVC, I thought quite pointedly, did not rely on that passage at page 17. I assume because they might have or they would have indicated it if they were being tested for, but there's no evidence, is there, that they were in fact being tested for in doing this biliary washing. My understanding, Your Honor, is that the VA examiner was saying that when an ERCP is done, and this one came back negative, that it would have come back positive and showed the presence of... He doesn't say it came back negative on a test designed to detect the parasite residue. It just says he had one of these. They would have shown up there. What he said was ERCP was negative and biliary cytology was negative. That's the treating physician's words. Then the VA examiner looked to that and said, biliary washing should have thus demonstrated the presence of organisms. Why did the Court of Veterans Claims not make any mention of this? I think because it's one of the various reasons, Your Honor, why the Court of Veterans Claims appropriately affirmed the decision of the Board. There are lots of other bases as well. I just wanted to point this out to the Court that there is in fact negative evidence here in this case. But it is true, though, that the... And this is one of those basic principles of law that you get all the time in tort cases, but the absence of evidence is not evidence of absence. The absence of evidence is not always evidence of absence. But as Judge Lori pointed out earlier, under VA law, the veteran has to present some evidence under 5107A in the first instance before we ever get to the question of whether there's preponderance. Here, the Board found there isn't any evidence. All we have is merely speculative evidence, which doesn't rise to the level of being sufficient evidence to grant a claim in the first instance. So we don't have a question of balancing evidence for and evidence against. We never even get there, because here there's just not enough evidence... You've got a really weird and rare parasite. And then you have a doctor who says there's reasonable cause to believe that this weird and rare parasite came from this service connection. There is no evidence that Mr. Roosevelt was infected with a parasite, Your Honor. That's... It's important to note that if there were evidence that he had a parasite and then that he had this cancer, we may be looking at a different case. That would be less speculative in that case. As my opposing counsel noted, in cancer there's always a realm of speculation that we're dealing in. That would make it more likely, perhaps. But here, there's a lot of levels of speculation along the way. There's speculation that Mr. Roosevelt ate raw food, that the raw food was contaminated with parasites, that the parasites caused a parasite infection in him, and that the parasite infection then led to cholangiocarcinoma. These are all facts. Those are all facts, Your Honor. Is there a legal question here as to what the meaning of negative evidence is? That would be a legal question if properly presented. Here, it's not because we have all these facts presented such that we never have a situation where the Board relied on just negative evidence. The Veterans Court specifically noted here... Why they said it would be an advisory opinion. Yes, Your Honor. In addition, the Veterans Court specifically said here that even if Mr. Roosevelt were correct, and we have confirmed that Mr. Roosevelt ate raw food and that the raw food was contaminated by parasites, and even if we assume that he had osteoarthritis, which is a parasite infection, even if that's all true, the Board found that even in that situation, there's not enough evidence that the parasite infection actually causes the cancer. And that's, again, a finding of fact. And on that basis, the Veterans Court said, it's harmless error here, even if the Board made an error as to the various other speculations leading to that point. So there's a lot of steps in the causal chain here that Ms. Roosevelt has to show, the four steps I just outlined. Here, there's only speculation as to the first two, that he ate raw food and the raw food was contaminated with parasites. There's no evidence in the record to support that. It's just speculation. As I understand what the Veterans Court did, the Veterans Court actually said, we don't even get to the benefit of the doubt rule and what constitutes negative evidence. That's absolutely correct, Your Honor. You never get to that because it was just speculation as to the first couple of steps. And then as to the third step, whether the parasite caused the parasite infection in his body, we actually have negative evidence, and the Veterans Court didn't address that directly, but it need not have because we never even get to the question of negative evidence here. There's no need to get there because there's not enough positive evidence in the first place to reach the benefit of the doubt. So while that could be a legal question that this court might address in some case, we think the court's already sufficiently addressed it in Skosen and in Fagan, but that could be a legal question. It's not presented here because we never get there. And the Court of Veterans Claims explained why there's this harmless error because the back end, the last of the four speculations, whether the parasite infection can cause the cancer, the board found no here. There's not enough evidence. There are medical treaties suggesting that it's a risk factor, that if he showed that he had parasite infection, that that would be a risk factor for developing the cancer, but that's not enough to be the causal chain that the board in this instance thought was sufficient to say that here it caused cancer. And she doesn't challenge that at this court, and she doesn't mention it in the reply brief. So there's a number of different ways this court could conclude that the Veterans Court was correct in affirming the decision of the board. Any of those steps along the way would be sufficient in our opinion. Thank you very much, Your Honor. If there's no further questions, we respectfully request that the court affirm the decision of the Veterans Court. Thank you, Mr. Goodman. Ms. Gerard-Grady has almost five minutes. Okay. If she needs it. I just want to make a couple of points. First of all, I would assert that a lack of sufficiently positive evidence doesn't constitute negative evidence any more than the absence of evidence does, and that ultimately that was the problem in this case or what the board and then the court affirmed the board, and that the evidence just wasn't convincing enough to them. And what I would say is that under 5107B, that's not the standard. The standard is you either have a preponderance of negative evidence, and that way VA can deny if they've got a preponderance. Otherwise, you've either got a balance of positive and negative, or you have positive evidence and you grant the claim. So in this case, what we have the board and the court saying is, well, it's just not good enough for us. Even though there's nothing that negates the favorable evidence, and I would agree that everything is circumstantial. So it's kind of like he said speculative, I say circumstantial. So I say we had evidence while he was in service that he had gastroenteritis and problems after eating food and unapproved eating establishments. We have cholangiocarcinoma. We have people who said that they ate with him in those establishments. I don't have a photograph of him actually eating the raw fish. And so, yeah, absolutely, we're trying to put all of these things together. But I don't think they're disputing that he ate the raw fish. What they're saying is that they're disputing that there's even evidence that he got a parasite from that. Well, yeah. Or that there's evidence that that kind of parasite is what caused the cancer. Well, and that's true. The assumption is the only way he would have gotten the parasite is from eating the raw fish. That is commonly the way that people can track that parasite that eventually leads to that kind of cancer is by the ingestion of the raw fish. So that is why it's such a high percentage of this type of cancer in Southeast Asia because of the condiment and because of their diet. But in any event, I would assert that I think that there is enough to the court. I don't think it would be an advisory opinion. I think that you can certainly say that negative evidence requires just that, negative evidence. There must be some evidence that negates the claim before you can just throw it out. What's the difference between this case and Doolin? I understand that's non-PREC. I apologize. I have not looked at Doolin within the last week. Can you refresh my memory? Essentially the exact same argument was made to a panel of this court where there was a non-PREC decision. And the court said that, in fact, if you don't get past the threshold of showing sufficient evidence, you never get into subparagraph B. I would say that in a situation where you have absolutely speculative evidence and you have no favorable evidence, you have nothing that really links it, then I would say yes. But I'd say that that's not what we have in this case, that we have quite a bit of evidence in favor of this claimant's claim. It just wasn't what they wanted. What they wanted was a VA examiner or an examiner, a medical expert, to say, yes, this is at least as likely related to that. Well, that wasn't something that was necessarily even possible to obtain in this case because we're dealing with, obviously, many years after. And what we have is circumstantial evidence, one leading up to another. And we do have a doctor saying, yeah, this all makes sense. It's reasonable to assume that this is related to this based on his history in the military, where he served, the type of cancer that he had. All of these things add up. The VA examiner alternatively said, I can't. I don't know. I can't make an opinion. So that's what we've got. And I would say that that's sufficiently favorable to meet the standard. I would say that in the absence of any evidence that negates that, I mean, really what I'm saying is you've got to have some negative evidence if you're going to say there's not enough favorable evidence. But there has to be something that cancels out that favorable evidence before you can deny it because that's what the law says. It's a preponderance of negative evidence. That means something, negative evidence. Thank you, Ms. Gerard-Brady. The case is submitted.